SHAW, P. J.
 

 This is an appeal by the People from an order dismissing the action. The defendant was prosecuted under section 973 of the Labor Code, the complaint charging that he “did wilfully and unlawfully while a strike, lockout, or other trade dispute was in active progress at his establishment located at 350 South Thomas Street, in the City of Pomona, County of Los Angeles, State of California, insert an advertisement in the Los Angeles Examiner, a newspaper published in the said County of Los Angeles, soliciting persons to work for him, the said Lee Smith, and failed to state plainly and explicitly in the said advertisement that a strike, lockout, or other trade dispute was in active progress at his said establishment.
 

 The docket of the trial court shows the following matters affecting the dismissal. The trial proceeded before the court without a jury, and evidence was introduced in behalf of the People. Then we find this entry in the docket: “Motion of defendant’s counsel Stanford Shaw for dismissal on the ground of the unconstitutionality of the statutes of which the defendant is charged as being indefinite and uncertain. Ruling reserved on motion.” Then another witness was sworn for the People, following which is the further docket entry: “Action dismissed by order of the Court in the furtherance of
 
 *Supp. 779
 
 justice, it appearing to the Court that Section 973 of the Labor Code, under which the defendant is charged, is indefinite, and uncertain.” Following this is a discussion of the rule requiring certainty in a penal statute, winding up with this statement: ‘1 The statute is so indefinite as to leave within the mind of the trial court the question as to what shall constitute the prohibited acts. The person to be charged has the right to know exactly what particular acts are prohibited. For the reasons stated it is ordered that the action be dismissed in furtherance of justice. ’ ’
 

 Although this entry reads like an opinion of the trial judge, we may consider it, for section 1385 of the Penal Code, which authorizes a dismissal “in furtherance of justice” requires that the reason therefor be set forth in an order “entered upon the minutes,” and the docket of the trial court here is to be regarded as its minutes. (Pen. Code, § 1428, as amended in 1953.) All such minute entries are required to be sent up as a part of the record on appeal by rule 3 of “Rules on Appeal from Municipal Courts and Inferior Courts in Criminal Cases.”
 

 The efficacy of the People’s appeal from the order is not impaired by the fact that before it was made the trial had proceeded to the extent that evidence had been introduced against defendant. Section 1466, Penal Code, as amended in 1951, authorizes the People to appeal from a judgment of dismissal made before the defendant has been placed in jeopardy, “or where the defendant has waived jeopardy.” Assuming that the defendant was placed in jeopardy by the proceedings occurring before his motion to dismiss, he waived that jeopardy by making such motion. In
 
 People
 
 v.
 
 Finch
 
 (1953), 119 Cal.App.2d 892, 899 [258 P.2d 1124], a case substantially the same on its facts as that now here, was presented to this court, and we held that by making the motion to dismiss, the defendant waived jeopardy and the People’s appeal was effective. We see no reason to depart from that decision, and refer to it for a full discussion of the matter.
 

 Considering now the grounds on which the dismissal was made, we find that they amount to no more and no less than this: “that the facts stated do not constitute a public offense”; a conclusion which must follow if the statute purporting to create an offense from those facts is invalid. This is one of the grounds of demurrer specified in section 1004, Penal Code, which is made applicable to municipal courts by section 690, Penal Code. Section 1385, Penal Code, as amend
 
 *Supp. 780
 
 ed in 1951, which is the only authorization for the court to dismiss an action “in furtherance of justice,’’ specifically provides that “No dismissal shall be made for any cause which would be ground of demurrer to the accusatory pleading.” The court, therefore, exceeded its authority in making the dismissal for the reason stated, and the order must be reversed, even if no other cause for reversal appeared.
 

 We conclude, further, that the trial court was in error in holding section 973 of the Labor Code invalid, and for that reason also, a reversal is necessary. Section 973, so far as material here, provides: “If any person advertises for, or seeks employees by means of newspapers, posters, letters, or otherwise, or solicits or communicates by letter or otherwise, with persons to work for him or the person for whom he is acting, or to work at any shop, plant', or establishment while a strike, lockout, or other trade dispute is still in active progress at such shop, plant, or establishment, he shall plainly and explicitly mention in such advertisement or oral or written solicitations or communications that a strike, lockout, or other labor disturbance exists.” Section 974 makes a violation of section 973 a misdemeanor.
 

 In support of the judgment, it is urged here that the terms “trade dispute” and “labor disturbance” are not defined in the Labor Code, and that they are too indefinite and uncertain for use in a penal statute, and it is therefore void, so far as they are concerned.
 

 The memorandum of the trial court seems to suggest that the terms “strike” and “lockout” are also in need of definition, but we see no ground for such a claim. These words are of such common use and their meaning, when applied to the subject of labor relations, with which this statute deals, is so plain, that their use in the statute cannot be held to introduce any uncertainty into it. For definition of the words, see 54 Corpus Juris Secundum 665 (lockout) and 83 Corpus Juris Secundum 525-526 (strike). However, since the complaint here uses the terms “strike, lockout or other trade dispute” in the alternative so that proof of any one of them might support the charge, we must consider the validity of the statute separately as to each.
 

 The rule regarding uncertainty of a statute is thus stated in
 
 Lockheed Aircraft Corp.
 
 v.
 
 Superior Court
 
 (1946), 28 Cal.2d 481, 484 [171 P.2d 21, 166 A.L.R. 701], where it was held that the words “politics” and' “political” are not too uncertain for use in a statute: “The first contention made by
 
 *Supp. 781
 
 defendant is that section 1101 is so uncertain and ambiguous that it is unconstitutional. All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears.
 
 (Collins
 
 v.
 
 Riley,
 
 24 Cal.2d 912, 915 [152 P.2d 169] ;
 
 People
 
 v.
 
 Superior Court,
 
 10 Cal.2d 288, 298 [73 P.2d 1221]. See also
 
 Jersey Maid Milk Products Co.
 
 v.
 
 Brock,
 
 13 Cal.2d 620, 636 [91 P.2d 577], and cases cited.)
 

 “A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language. As stated in
 
 Pacific Coast Dairy
 
 v.
 
 Police Court,
 
 214 Cal. 668, at page 676 [8 P.2d 140, 80 A.L.R. 1217], ‘Mere difficulty in ascertaining its meaning, or the fact that it is susceptible of different interpretations will not render it nugatory. Doubts as to its construction will not justify us in disregarding it.’ ” In
 
 Smith
 
 v.
 
 Peterson
 
 (1955), 131 Cal.App.2d 241, 246 [280 P.2d 522], the court expressed like views, and added: “The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding.” In
 
 Smulson
 
 v.
 
 Board of Dental Examiners
 
 (1941), 47 Cal.App.2d 584, 587 [118 P.2d 483], the court said: “It is not required that even a penal statute, to be valid, have that degree of exactness which inheres in a mathematical theorem.” In
 
 People
 
 v.
 
 Smith
 
 (1939), 36 Cal.App.2d Supp. 748, 752 [92 P.2d 1039], this court said: “To make a statute sufficiently certain to comply with constitutional requirements it is not necessary that it furnish detailed plans and specifications of the acts or conduct prohibited.” In
 
 People
 
 v.
 
 Ring
 
 (1937), 26 Cal.App.2d Supp. 768, 772 [70 P.2d 281], this court said: “Words used in creating a statutory crime do not fail of such certainty merely because the offense, when viewed through them, may not have all the precision in outline of a geometrical figure; if the main and central part of the field of view is clear, some slight lack of definition around its outer edges is not fatal.”
 

 Section 973 provides in substance that one who advertises for employees “while a strike, lockout or other trade dispute is in active progress” at his shop shall mention in his advertisement the fact that “a strike, lockout or other labor dis
 
 *Supp. 782
 
 turbance exists. ” It is no doubt true that the terms “trade dispute” and “labor disturbance” if considered by themselves, without context, might have different significations. But here they appear in the same sentence, and in such context that it seems the same sort of situation must be intended by both of them. The Legislature was trying to protect workers against the form of misrepresentation of which there had been much complaint in the past, in which employers who had labor troubles sought employees without notifying those approached that such labor troubles existed. With such object in view, it seems unreasonable to suppose that the labor troubles whose existence requires an employer to make a public statement in his advertisement would be in anywise different from those which he was required to state. We think they are not. Bach of these terms, when so used, throws some light on the meaning of the other. Moreover, each of these phrases is of general import and they are accompanied by more specific words. Hence the rule of
 
 ejusdem, generis
 
 is applicable here, and this being a criminal statute, it is to be applied with stringency.
 
 (People
 
 v.
 
 Thomas
 
 (1945), 25 Cal.2d 880, 899 [156 P.2d 7].)
 

 With these matters in mind, we see at once that the two phrases in question apply only to matters affecting the relations between employers and those who work or might work for them. This eliminates the possibility, discussed in argument, that the phrase “trade dispute” might refer to disputes between tradesmen as to customers and other matters. See
 
 McKinley
 
 v.
 
 California Emp. Stab. Com.
 
 (1949), 34 Cal.2d 239, 242 [209 P.2d 602], where the court used the term “labor dispute” as if it were synonymous with “trade dispute” in the statue next to be cited.
 

 The term “trade dispute” is not new in our law. In 1935 our Legislature passed the Unemployment Insurance Act (Stats. 1935, p. 1226) which contained a section 56 providing that an employee is not eligible for unemployment benefits “if he left his employment because of a trade dispute . . . in the establishment in which he was employed.” (Stats. 1935, p. 1238.) This provision is now in section 1262 of the Unemployment Insurance Code, in substantially the same form. The scope and meaning of the term “trade dispute” in this statute have been frequently before the courts, and while no decision has formulated a definition of it, the courts have apparently had no difficulty in ascertaining whether a particular situation was or was not within its meaning,
 
 *Supp. 783
 
 nor have any of the decisions suggested that there was any uncertainty about it. See the following eases in which this matter was discussed:
 
 Bodinson Mfg. Co.
 
 v.
 
 California Emp. Com.
 
 (1941), 17 Cal.2d 321, 324 [109 P.2d 935] ;
 
 Matson Terminals, Inc.
 
 v.
 
 California Emp. Com.
 
 (1944), 24 Cal.2d 695, 702 [151 P.2d 202];
 
 American-Hawaiian Steamship Co.
 
 v.
 
 California Emp. Com.
 
 (1944), 24 Cal.2d 716, 719 [151 P.2d 213] ; W.
 
 R. Grace & Co.
 
 v.
 
 California Emp. Com.
 
 (1944), 24 Cal.2d 720, 727 [151 P.2d 215] ;
 
 Bunny’s Waffle Shop, Inc.
 
 v.
 
 California Emp. Com.
 
 (1944), 24 Cal.2d 735, 740-741 [151 P.2d 224] ;
 
 Mark Hopkins, Inc.
 
 v.
 
 California Emp. Com.
 
 (1944), 24 Cal.2d 744, 748 [151 P.2d 229, 154 A.L.R.
 
 1081]; McKinley
 
 v.
 
 California Emp. Stab. Com., supra
 
 (1949), 34 Cal.2d 239, 242;
 
 Thomas
 
 v.
 
 California Emp. Stab. Com.
 
 (1952), 39 Cal.2d 501, 505 [247 P.2d 561].) In all of these cases the term “trade dispute" has been regarded as relating to the relations between employers and those who did or might work for them. It extends to contentions between employers and unions, even though no members of the union are then working for such employers. Prom the decisions in these eases, a sufficiently accurate meaning for the term may be found to justify its use in a statute.
 

 We note that in
 
 Commonwealth
 
 v.
 
 Libbey
 
 (1914), 216 Mass. 356 [103 N.E. 923, Ann.Cas. 1915B 695, 49 L.R.A.N.S. 879], a statute requiring that an employer advertising for employees during a strike or labor disturbance shall advertise the fact that “a strike, lockout, or other labor disturbance exists" was held valid against several attacks made on it. It does not appear that the particular objection of uncertainty was made, so the case is not direct authority here; but at least the decision contains no suggestion of a doubt on that point.
 

 We are not considering the question whether the use in the complaint of the words “trade dispute" where the statute uses the words “labor disturbance" would impair the efficacy of the complaint to charge an offense.
 

 The judgment of dismissal is reversed, and the trial court is directed to retry the case.
 

 Patrosso, J., and Swain, J., concurred.