*Jermaine Dancer Kimble v. State of Maryland*, No. 2049, September Term, 2017. Opinion by Nazarian, J.

**COMPETENCY TO STAND TRIAL – DISMISSAL OF CHARGES – RUNNING OF TIME PERIOD**

The time periods in Maryland Code, § 3-107(a) of the Criminal Procedure Article, after which a court must dismiss criminal charges against a defendant found incompetent to stand trial, begin to run from the date of the incompetency finding, not from the date the charges were filed.

Circuit Court for Baltimore County
Case No. 03-K-12-007003

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2049

September Term, 2017

_____

JERMAINE DANCER KIMBLE

v.

STATE OF MARYLAND

_____

Nazarian,
Arthur,
Beachley,

JJ.

_____

Opinion by Nazarian, J.

_____

Filed: August 1, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Jermaine Kimble was charged on November 9, 2012 with sexual abuse of a minor and related offenses. His trial was postponed several times, and the Circuit Court for Baltimore County eventually found him incompetent to stand trial.

On November 13, 2017, Mr. Kimble filed a motion to dismiss the charges. He argued that Maryland Code, § 3-107(a) of the Criminal Procedure Article ("CP") requires dismissal when the defendant has been found incompetent to stand trial and more than five years have passed from the date the charges were filed. The circuit court denied Mr. Kimble's motion on the ground that the five-year time period runs from the date of the incompetency finding, not from the date the charges were filed, and that the time period had not yet elapsed. Mr. Kimble appeals, and we affirm.

## I.    BACKGROUND

In June 2014—approximately two years after Mr. Kimble had been charged, and after his trial had been postponed twice while counsel had him evaluated—the circuit court ordered the Department of Health to evaluate his competency to stand trial. Based on the Department's report, the court on September 2, 2014 found Mr. Kimble incompetent to stand trial ("IST"), found him dangerous, and committed him to the custody of the Department.[1]

At a review hearing on April 3, 2015, the court found that Mr. Kimble remained IST

---

[1] "Incompetent to stand trial" is defined as "not being able: (1) to understand the nature or object of the proceeding; or (2) to assist in one's defense." CP § 3-101(f) (2001, 2008 Repl. Vol., 2014 Supp.). The circuit court has the authority to "determine, on evidence presented on the record, whether the defendant is incompetent to stand trial." *Id.* § 3-104(a); *see also id.* § 3-105, § 3-106.

but no longer was dangerous, and the court released him subject to continued treatment. Several months later, the court held another status hearing, and found that Mr. Kimble was still IST and "fully compliant" with his treatment plan.

At Mr. Kimble's annual review hearing on April 1, 2016, the court considered the Department's most recent evaluation and found that Mr. Kimble remained incompetent to stand trial. In the context of scheduling the next status hearing, the parties and the court agreed that it should be set close to the "dismissal date," which all appeared to assume was five years from the date Mr. Kimble was charged:

> THE COURT: All right. Good morning. Okay. [Mr. Kimble]'s in for his annual review and I do have a report from the Department. Has counsel received that?
>
> [DEFENDANT'S COUNSEL]: I have, Your Honor.
>
> STATE: As has the State, yes, Your Honor.
>
> THE COURT: All right. Any comments or anything?
>
> [DEFENDANT'S COUNSEL]: Your Honor, in this report, the Department opines that Mr. Kimble, at this point, is both, remains incompetent to stand trial and also cannot be restored to competency in the foreseeable future.
>
> THE COURT: Right.
>
> [DEFEDNANT'S COUNSEL]: I would ask that the Court set the next date at the dismissal date, which at this point --
>
> THE COURT: Okay.
>
> [DEFEDNANT'S COUNSEL]: -- is, by my calculation, he was charged originally in November of 2012, so in the December 2017 docket.
>
> THE COURT: Okay. So, December 2017, if we have that status [] conference at that time, that would be the dismissal date.
>
> [DEFENDANT'S COUNSEL]: Yes, Your Honor.
>
> THE COURT: Okay.

[DEFENDANT'S COUNSEL]: And, at this point, I, you know, I don't think setting another status conference --

THE COURT: Is going to change anything.

[DEFENDANT'S COUNSEL]: -- is going to change anything and just make the Department do another evaluation and, quite frankly, I think they need the time, to spend the time on, for having seen some of the other ones today --

THE COURT: Other things.

[DEFENDANT'S COUNSEL]: -- doing a little more --

THE COURT: Yes, sir.

[DEFENDANT'S COUNSEL]: -- psychological testing with the time that they do have.

THE COURT: Perhaps. Okay. Does the State have anything to contribute or --

STATE: No, Your Honor.

THE COURT: -- suggest? I mean, it makes perfect sense to me, that we would not do another annual review. I mean, I do think that the, that the statute does require an annual review, but this isn't, 2017 isn't pushing, even though it's December, it's not pushing it back that much further than we would normally see him, so I think this is fine. It's actually December the 1st.

[DEFENDANT'S COUNSEL]: That would be perfect.

THE COURT: So, 12/1 of 2017 will be his annual review and that will be his dismissal date.

[DEFENDANT'S COUNSEL]: Okay.

THE COURT: I'll note that on my calendar. All right, we'll see you then.

[DEFENDANT'S COUNSEL]: Okay. Thank you.

THE COURT: Keep up the good work, sir.

Approximately a year and a half went by, and on November 13, 2017, Mr. Kimble filed a motion to dismiss. He argued that the five-year time limit set forth in CP § 3-107(a) required the court to dismiss his charges. The court held a hearing on the motion on December 1, 2017, at which the State argued that dismissal was not required. Although

3

five years had passed since the charges were filed, the State argued that the time period begins on the date he was found IST, not the date he was charged, and that the motion should be denied because that time had not yet expired. The court agreed, and denied Mr. Kimble's motion:

> THE COURT: Well, I think under the circumstances where the maximum penalty is exceeded by the length of time that the person has been held, that you would, you certainly have a strong argument there. The question is, whether the words when charged mean [] are intended to distinguish between a felony or a lesser offense or a capital offense, or if the words when charged are intended to sort of [] start the clock on the dismissal of the charges. And I have to say [] that it does appear to me that the language is intended to distinguish between a capital offense, a felony and a lesser offense, rather than the date at the time at which [] the clock starts to run in terms of the State's ability to maintain the charges against the Defendant. So, I'm going to deny your Motion at this time.

We supply additional facts as necessary below.

## II.    DISCUSSION

The only question before us is whether the circuit court erred in denying Mr. Kimble's motion to dismiss the charges.[2] The answer hinges on the resolution of the purely legal question of whether the circuit court correctly interpreted CP § 3-107(a) to

---

[2] Mr. Kimble states the Question Presented as follows:

> Did the trial court err in denying Mr. Kimble's motion to dismiss when Mr. Kimble was found incompetent to stand trial and more than five years had passed from the date Mr. Kimble was charged?

The State states the Question Presented as follows:

> Did the circuit court properly deny the Motion to Dismiss filed by Kimble less than five years after he was first deemed incompetent to stand trial?

4

mean that the five-year time limit began to run from when Mr. Kimble was found incompetent rather than, as he now argues, the date on which charges were filed. Because the plain language of CP § 3-107(a) is subject to "two or more reasonable alternative interpretations," *Deville v. State*, 383 Md. 217, 223 (2004), we find it ambiguous, and resolve that ambiguity by finding that the time limits began running when he was found IST.

Normally, we review a trial court's decision on a motion to dismiss an indictment for abuse of discretion. *State v. Lee*, 178 Md. App. 478, 484 (2008). But where, as here, the trial court's decision "involves an interpretation and application of Maryland constitutional, statutory or case law, [we] must determine whether the trial court's conclusions are 'legally correct' under a *de novo* standard of review." *Schisler v. State*, 394 Md. 519, 535 (2006).

The Court of Appeals has "observed many times" that "'the paramount goal of statutory interpretation is to identify and effectuate the legislative intent underlying the statute(s) at issue.'" *State v. Ray*, 429 Md. 566, 576 (2012) ("*Ray II*") (*quoting Derry v. State*, 358 Md. 325, 335 (2000)). When interpreting a statute, we consider the text first. If we find the language ambiguous, we look to other indicia as well:

> In interpreting a statute, a court first considers the statute's language, which the court applies where the statute's language is unambiguous and clearly consistent with the statute's apparent purpose. Where the statute's language is ambiguous or not clearly consistent with the statute's apparent purpose, the court searches for the General Assembly's intent in other indicia, including the history of the statute or other relevant sources intrinsic and extrinsic to the legislative process, in light of: (1) the structure of the statute; (2) how the statute relates to

other laws; (3) the statute's general purpose; and (4) the relative rationality and legal effect of various competing constructions.

*Hailes v. State*, 442 Md. 488, 495–96 (2015) (cleaned up).

The version of the statute in effect in 2017, at the time Mr. Kimble filed his motion,[3] stated that unless the court finds extraordinary cause to extend the time period, the court shall dismiss felony charges such as these after the expiration of five years or the maximum sentence:

> (a) Whether or not the defendant is confined and unless the State petitions the court for extraordinary cause to extend the time, the court shall dismiss the charge against a defendant found incompetent to stand trial under this subtitle:
>
> > (1) when charged with a felony or a crime of violence as defined under § 14-101 of the Criminal Law Article, **after the lesser of the expiration of 5 years or the maximum sentence for the most serious offense charged**; or
> >
> > (2) when charged with an offense not covered under item (1) of this subsection, **after the lesser of the expiration of 3 years or the maximum sentence for the most serious offense charged**.
>
> (b) Whether or not the defendant is confined, if the court considers that resuming the criminal proceeding would be unjust because so much time has passed since the defendant was found incompetent to stand trial, the court shall dismiss the charge without prejudice. However, the court may not

---

[3] As we discuss further below, the statute in its current form is almost identical to the language in effect in 2017, and our construction of the statute applies equally to the statute in its current form. In addition, the version of CP § 3-107 in effect in 2012, when the charges were filed, was almost identical to the 2017 version. The absence of material differences makes it unnecessary for us to decide which version of the statute—*i.e.*, 2012 or 2017—applies to Mr. Kimble's motion. For our purposes, we assume that the 2017 version applied, which matters only insofar as the court appeared, based on references to capital punishment at the December 1, 2017 hearing, to be relying on a pre-2013 version (2013 was the year the death penalty in Maryland was repealed).

dismiss a charge without providing the State's Attorney and a victim or victim's representative who has requested notification under § 3-123(c) of this title advance notice and an opportunity to be heard.

(c) If charges are dismissed under this section, the court shall notify:

(1) the victim of the crime charged or the victim's representative who has requested notification under § 3-123(c) of this article; and

(2) the Criminal Justice Information System Central Repository.

CP § 3-107(a) (2001, 2008 Repl. Vol., 2017 Supp.) (emphasis added).

The issue in this case is when this time period begins to run. Mr. Kimble argues that the clock starts when the defendant is charged, *i.e.*, that the term "when charged" refers to the time the clock should start. The State argues that the period begins when the defendant is found incompetent to stand trial, *i.e.*, that the term "when charged" refers to the type of crime charged, and is meant to differentiate when the different time periods (five or three years) apply.[4] We agree that the statute is ambiguous, although as a grammatical matter, the term "when charged" can only refer to the type of crime. The ambiguity arises from the statute's silence about when the clock starts, not from the ambiguity of the term "when charged."

To resolve the ambiguity, we examine the statute's language (including previous versions), review relevant case law, and review the legislative history. *See Hailes*, 442 Md. at 495–96; *see also Town of Oxford v. Koste*, 204 Md. App. 578, 585–86 (2012), *aff'd* 431

---

[4] The five years from the IST finding expires on September 4, 2019.

Md. 14 (2014).

## A. Earlier Versions Of The Statute Define The Starting Point As The Date The Defendant Was Found IST.

Both Mr. Kimble and the State acknowledge that pre-2006 versions of CP § 3-107 unambiguously started the time period on the date the court found the defendant incompetent to stand trial. In its earliest form, before 1967, the statute contained no time period at all—the relevant section of then-Article 59 provided that a defendant found to be incompetent to stand trial would be committed to an institution, and the pending criminal charges would be stayed "until he or she shall have recovered." Md. Code (1951), Article 59, § 8; *see also Ray v. State*, 410 Md. 384, 407 (2009) ("*Ray I*"); *Ray II*, 429 Md. at 580.

In 1967, the General Assembly amended the statute to limit the period of commitment. The trial court could—in its discretion—dismiss pending criminal charges if it determined that "so much time has elapsed since the finding of [the defendant's] incompetency that it would be unjust to resume the criminal proceeding." Md. Code (1957, 1968 Repl. Vol.), Article 59, § 8(b); *see also Ray I*, 410 Md. at 407–08; *Ray II*, 429 Md. at 580. But the court could exercise its discretion to dismiss charges only after the expiration of certain time periods measured "from the date of the finding of incompetency"—ten years in a capital case and five years in "all other cases punishable by imprisonment":

> Whether or not the defendant is confined, if the court is of the view that so much time has elapsed since the finding of incompetency that it would be unjust to resume the criminal proceeding, the court may dismiss the charge; provided, that in capital cases the court may not dismiss the charge **until ten (10) years have elapsed from the date of the finding of incompetency** and in all other cases punishable by imprisonment in the penitentiary the court may not dismiss the

8

> charge **until five (5) years have elapsed from the date of the finding of incompetency**. . . .

Article 59, § 8(b) (1957, 1964 Repl. Vol., 1967 Supp.) (emphasis added). This section continued to allow the State to hold a defendant IST indefinitely, an issue addressed by a later version of the statute that we discuss below. *See Ray II*, 429 Md. at 581.

In 1982, the statute was amended again and re-codified as Section 12-105 of the Health-General Article ("HG"). *See Ray I*, 410 Md. at 408–09; *Ray II*, 429 Md. at 580–81. The update re-worded the statute and gave it the essential structure it has today. Like the earlier version, the 1982 version gave the court discretion to dismiss the charges if it found that pursuing them would be unjust because of the passage of time, but only after ten years in capital cases and five years in others:

> Whether or not the defendant is confined, if the court considers that resuming the criminal proceeding would be unjust because so much time has passed since the defendant was found incompetent to stand trial, the court may dismiss the charge. However, **the court may not dismiss a charge**:
>
> (1) **Until 10 years after the defendant was found incompetent to stand trial** in any capital case; or
>
> (2) **Until 5 years after the defendant was found incompetent to stand trial** in any other case where the penalty may be imprisonment in the State Penitentiary.

HG § 12-105 (1982) (emphasis added).

In 1984 and 1997, the General Assembly made several additions to HG § 12-105 not relevant to this appeal, and also re-numbered it as HG § 12-106.[5] *See Ray I*, 410 Md.

---

[5] The 1984 version read:

> (a) Whether or not the defendant is confined, if the court considers that resuming the criminal proceeding would be

unjust because so much time has passed since the defendant was found incompetent to stand trial, the court may dismiss the charge. However, **the court may not dismiss a charge**:

> (1) **Until 10 years after the defendant was found incompetent to stand trial** in any capital case; or

> (2) **Until 5 years after the defendant was found incompetent to stand trial** in any other case where the penalty may be imprisonment in the State penitentiary.

(b) The court shall notify the central repository of the criminal justice information system any time charges are dismissed under this section.

HG § 12-106 (1982, 1984 Supp.) (emphasis added).

The 1997 version read:

> (a) Whether or not the defendant is confined, if the court considers that resuming the criminal proceeding would be unjust because so much time has passed since the defendant was found incompetent to stand trial, the court may dismiss the charge. However, the court may not dismiss a charge:

>> (1) Without providing the State's Attorney and a victim who has filed a notification request form under Article 27, § 770 of the Code advance notice and an opportunity to be heard; and

>> (2) (i) **Until 10 years after the defendant was found incompetent to stand trial** in any capital case; or

>> (ii) **Until 5 years after the defendant was found incompetent to stand trial** in any other case where the penalty may be imprisonment in the State penitentiary.

> (b) If charges are dismissed under this section, the court shall notify:

>> (1) The victim of the crime charged who has filed a notification request form under Article 27, § 770 of the Code; and

>> (2) The Central Repository of the Criminal Justice Information System.

HG § 12-106 (1982, 1994 Repl. Vol., 1997 Supp.) (emphasis added).

at 409 n.9. And in 2001, the General Assembly again revisited the incompetency statutes, repealing HG § 12-106 and re-enacting it as CP § 3-107.[6] But the 1982 language setting the time periods and running them from the date of the IST finding remained, without revision, in all of these versions. *See* footnotes 4–6.

In 2006, the General Assembly again revised CP § 3-107, and those amendments give rise to the dispute here. During this round of revisions, the language "after the defendant was found incompetent to stand trial" was removed. The time periods remained,

---

[6] The 2001 version read:

> (a) Whether or not the defendant is confined, if the court considers that resuming the criminal proceeding would be unjust because so much time has passed since the defendant was found incompetent to stand trial, the court may dismiss the charge. However, **the court may not dismiss a charge**:
>
> > (1) without providing the State's Attorney and a victim or victim's representative who has filed a notification request form under § 11-104 of this article advance notice and an opportunity to be heard; and
> >
> > (2) (i) **until 10 years after the defendant was found incompetent to stand trial** in any capital case; or
> >
> > (ii) **until 5 years after the defendant was found incompetent to stand trial** in any other case where the penalty may be imprisonment in a State correctional facility.
>
> (b) If charges are dismissed under this section, the court shall notify:
>
> > (1) the victim of the crime charged or the victim's representative who has filed a notification request form under § 11-104 of this article; and
> >
> > (2) the Criminal Justice Information System Central Repository.

CP § 3-107 (2001) (emphasis added).

11

but the statute contained at least three relevant (and substantive) changes. *First*, the statute no longer defined the event beginning the time periods. *Second*, the revisions made dismissal after expiration of those time periods mandatory, rather than discretionary. And *third*, the revisions added a new subsection (b) that allows the court to dismiss the charges, without prejudice, when the court finds it would be unjust to continue because "so much time has passed" since the defendant was found IST:

> (a) Whether or not the defendant is confined and unless the State petitions the court for extraordinary cause to extend the time, **the court shall dismiss the charge** against a defendant found incompetent to stand trial under this subtitle:
>
>> (1) when charged with a capital offense, **after the expiration of 10 years**;
>>
>> (2) when charged with a felony or a crime of violence as defined under § 14-101 of the Criminal Law Article, **after the lesser of the expiration of 5 years or the maximum sentence for the most serious offense charged**; or
>>
>> (3) when charged with an offense not covered under paragraph (1) or (2) of this subsection, **after the lesser of the expiration of 3 years or the maximum sentence for the most serious offense charged**.
>
> (b) **Whether or not the defendant is confined, if the court considers that resuming the criminal proceeding would be unjust because so much time has passed since the defendant was found incompetent to stand trial**, **the court shall dismiss the charge without prejudice.** However, the court may not dismiss a charge without providing the State's Attorney and a victim or victim's representative who has requested notification under § 3-123(c) of this title advance notice and an opportunity to be heard.
>
> (c) If charges are dismissed under this section, the court shall notify:
>
>> (1) the victim of the crime charged or the victim's representative who has requested notification under § 3-123(c) of this article; and

(2) the Criminal Justice Information System Central Repository.

CP § 3-107(a) (2001, 2006 Supp.) (emphasis added).

The statute was revised again in 2013 in connection with the repeal of the death penalty, *see Bellard v. State*, 452 Md. 467, 472 (2017), and that is the version in effect today (save for two word substitutions in 2015 and 2018 not relevant to this appeal). The only change to the text in 2013 from the 2006 version was the removal of subsection (a)(1), which applied to capital offenses. But for present purposes, although we assume that the version in effect in 2017—reproduced in full above—is the applicable version, *see* footnote 3 above, the relevant language has not changed since 2006.

We presume that "a change in the phraseology of a statute as part of a recodification will ordinarily not be deemed to modify the law unless the change is such that the intention of the Legislature to modify the law is unmistakable." *Comptroller of the Treasury v. Blanton*, 390 Md. 528, 538 (2006) (internal quotations and citations omitted). And in this instance, the 2006 revisions reveal no intention by the legislature to change when the time periods begin to run. Indeed, the structure of the statute as a whole indicates that the General Assembly meant to keep that time the same: subsection (b) still contemplates a discretionary dismissal of charges in a situation where "the court considers that resuming the criminal proceeding would be unjust because **so much time has passed since the defendant was found incompetent to stand trial** . . . ." CP § 3-107(b) (emphasis added). Reading the deletion of similar language from subsection (a) to require the time to run from the date of indictment would create a new inconsistency with the express terms of another

13

subsection of the same statute. *See Ray II*, 429 Md. at 595–96. Although we don't know why the timing language came out of subsection (a), we see no basis to interpose a new starting point that deviates from the statute's history and structure.

## B. Case Law Is Consistent.

Neither the State nor Mr. Kimble cited, nor could we find, any cases interpreting the language of CP § 3-107(a) at issue here. The Court of Appeals has examined CP § 3-107 and its legislative history, though, in answering other questions about the statute in *Ray I*, 410 Md. at 407–18, and *Ray II*, 429 Md. at 579–85. As the Court explained in the *Ray* cases, the 2006 revisions were driven in large part by the concern that Maryland's incompetency statutes, including CP § 3-106 and CP § 3-107, allowed for indefinite commitments of incompetent defendants, including for periods longer than they would have been incarcerated had they been convicted of and sentenced for the charged crime(s). *See Ray I*, 410 Md. at 415–16; *Ray II*, 429 Md. at 585–86. Among other things, that concern was prompted by *Jackson v. Indiana*, 406 U.S. 715, 729 (1972), in which the Supreme Court held that indefinite confinement violates an IST defendant's equal protection and due process rights. *See Ray I*, 410 Md. at 413–16; *Ray II*, 429 Md. at 581, 585–89. So in contrast to earlier versions of the statute, in which the court had discretion to decide whether to dismiss charges, the revised version of the statute mandated dismissal after certain time periods expired. *See Ray II*, 429 Md. at 584.

In *Ray II*, the particular question was whether dismissals under subsection (a) were dismissals without prejudice, even though subsection (a) did not contain the phrase "without prejudice" (as subsection (b) did). 429 Md. at 577–78. After analyzing the

14

legislative history and case law, the Court held that subsection (a) dismissals *were* dismissals without prejudice, just as under CP § 107(b). *Id.* at 595. In the course of its analysis, the Court observed that the time limits were "the General Assembly's way of saying" that if a defendant does not become competent within a certain period of time, it is highly unlikely that they will become competent in the foreseeable future:

> By mandating dismissals upon the expiration of ten, five and three years—regardless of whether the psychiatrists still deemed the defendant restorable—the General Assembly created the upper limit on how long the State may attempt to work toward the goal of making an incompetent defendant become competent, at least with respect to that indictment.
>
> ***
>
> But . . . [t]hat the dismissal deadlines are statutory cutoffs for restorability determinations does not mean that the State may not re-indict such an individual unless he has been restored to competency. **What these dismissal deadlines are is the General Assembly's way of saying that—if a defendant, charged with a particular crime and placed in IST commitment, does not become competent within ten, five, or three years depending on the severity of the crime— there is no substantial probability that the defendant will become competent in the foreseeable future. In other words, the passage of time in IST treatment—without the defendant's gaining competency—and the resulting dismissal under CP § 3-107 create the presumption that the defendant is not restorable.**
>
> This reading of CP § 3-107 reconciles, on the one hand, the requirement of CP § 3-107(a) that charges be dismissed upon expiration of time; with, on the other hand, the provision of CP § 3-107(b) that any dismissal be "without prejudice." **Even more importantly, such a reading of CP § 3-107 carries out the General Assembly's intent of making sure that unrestorable defendants are not "locked up and forgotten."**

*Id.* at 594–95 (emphasis added) (*quoting* Del. Kathleen M. Dumais, Written Testimony in Support of HB 795 (Feb. 22, 2006)). The Court went on to observe that the State may or

may not re-indict the defendant, depending on the circumstances. *Id.* at 595–96.

In light of the Court of Appeals's analysis, it makes more sense to read the time to run from the date of the IST finding. The dual aims of the time limits are to (1) prevent a defendant's prolonged or indefinite IST confinement and (2) provide the State sufficient opportunity to restore a defendant to competency. It makes sense, then, to begin the time period once competency becomes an issue in the case, not before. Indeed, the State's opportunity to restore competency to a defendant who is apprehended after charges are filed would be truncated by Mr. Kimble's reading.

## C.     The Legislative History Points To The Same Answer.

*Finally*, the parties did not cite, and we did not find, any part of the legislative history of House Bill 795 (enacted as Chapter 353 of the Laws of Maryland in 2006) that addresses why the "after the defendant was found incompetent" language was removed from subsection (a). Although the history refers occasionally to the existence of the time limits, the time when the clock should start running does not appear. For example, the "Short Summary" section of the Floor Report to House Bill 795 states, without elaboration, that "the bill provides time requirements for dismissal of criminal charges if the defendant remains incompetent to stand trial." Both the Floor Report and each of three versions of the Fiscal and Policy Note contain sections titled "Dismissal of Charges," but those sections simply mirror the ambiguous language of the statute:

> Whether or not the defendant is confined and unless the State petitions the court for extraordinary cause to extend the time, the court shall dismiss the charge against a defendant: (1) after 10 years, if charged with a capital offense; (2) after the lesser of 5 years or the maximum sentence for the most serious

16

offense charged, if charged with a felony or crime of violence; or (3) after the lesser of the expiration of 3 years or the maximum sentence for the most serious offense charged, if charged with an offense not covered by the two previous categories.

The court is required to dismiss a charge without prejudice if the court considers that resuming the criminal proceeding would be unjust because so much time has passed since the defendant was found incompetent to stand trial. Before dismissing a charge, the court must provide the State's Attorney and a victim or victim's representative who has requested notification advance notice and an opportunity to be heard. If charges are dismissed, the court must notify the victim or representative mentioned above and the Criminal Justice Information System (CJIS).

Similarly, the preamble of the law as enacted notes that the bill "require[s] a court to dismiss, under certain circumstances, a certain charge after passage of certain time periods," but does not mention the starting point for those time periods. 2006 Md. Laws, Chap. 353. And none of the written testimony in support of or against House Bill 795 suggests that the date the period begins to run ought to be changed from the date of the IST finding to the date of indictment.[7]

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. APPELLANT TO PAY COSTS.**

---

[7] Mr. Kimble argues that the "rule of lenity and principles of fundamental fairness militate in favor of" his reading of the statute. The State does not respond to this argument. Nevertheless, the rule of lenity does not apply in this case. The rule allows a court to interpret an ambiguous criminal statute in a way that "treats the defendant more leniently." *Bellard*, 452 Md. at 502 (*quoting Oglesby v. State*, 441 Md. 673, 676 (2015)). But it applies only "where there is no evidence of legislative intent with respect to an ambiguous statute—*i.e.*, the ambiguity cannot be resolved under the traditional principles of statutory construction." *Bellard*, 452 Md. at 503. In this case, the rules of statutory construction allow us to interpret the statute, so we need not resort to this alternative.